1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALISSA STEVENS, | Case No.: 1:18-cv-1082 - JLT |
| Plaintiff, | ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF ALISSA STEVENS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Alissa Stevens asserts she is entitled to supplemental security income under Title XVI of the Social Security Act.  Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision denying benefits.  For the following reasons, the administrative decision is **AFFIRMED**.

<u>**BACKGROUND**</u>

On May 26, 2016, Plaintiff filed her application for benefits, alleging disability beginning on August 31, 2013.  (Doc. 10-6 at 2)  The Social Security Administration denied the application at the initial level and upon reconsideration.  (*See generally* Doc. 10-4)  Plaintiff requested a hearing and testified before an ALJ on January 9, 2018.  (*See* Doc. 10-3 at 19, 39)  The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on February 22, 2018.  (Doc. 10-3 at 19-33)  Plaintiff filed a request for review of the decision with the Appeals Council, which denied her request on June 29, 2018.  (*Id.* at 2-5)  Therefore, the ALJ's determination

became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

///

# **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date of May 5, 2016. (Doc. 10-3 at 21) Second, the ALJ found Plaintiff's severe impairments included: morbid obesity, bipolar disorder, depression, attention-deficit hyperactivity disorder (ADHD), obsessive-compulsive disorder (OCD), and a history of alcohol and cannabis dependence. (*Id.*) The ALJ noted Plaintiff also alleged she had borderline personality disorder and Asperger syndrome, but found "a lack of objective evidence to substantiate the existence of a medically determinable impairment." (*Id.* at 22) Likewise, the ALJ found "autism spectrum disorder… [was] not a medically determinable impairment" for Plaintiff. (*Id.*)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 10-3 at 22-25) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple and routine tasks. She can have only occasional interaction with supervisors and brief and superficial interaction with coworkers and the public. She is limited to a low-stress work environment, defined as involving simple workplace decisions and a workplace setting with little change to the setting and routine. In addition, she requires a relaxed production pace.

(*Id.* at 25) Because Plaintiff did not have past relevant work, the ALJ continued to step five. (*Id.* at 31) With this residual functional capacity ("RFC"), the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from May 5, 2016, through the date of the decision. (*Id.* at 32)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating her credibility and incorporating her testimony in the residual functional capacity. (Doc. 18 at 6-15) In addition, Plaintiff contends the ALJ erred in evaluating her mental impairments at step two and capturing her symptoms in the mental residual functional capacity. (*Id.* at 16-27) Finally, Plaintiff asserts the Appeals Council erred by failing to remand the action to develop the record with an updated medical opinion. (*Id.* at 27-28) The Commissioner argues the ALJ's final decision is supported by substantial evidence, and no duty to develop the record arose in this case. (*See generally* Doc. 19 at 3-17)

**A.     Limitations to which Plaintiff Testified and the RFC**

As an initial matter, the Court notes that Plaintiff fails to identify the subjective complaints and limitations addressed in Plaintiff's testimony that she believes should have been incorporated into the residual functional capacity by the ALJ. Previously, the Ninth Circuit "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way" where the claimant failed to "detail what other physical limitations" he believed should have been included in the RFC. *See Valentine v. Astrue,* 574 F.3d 685, 692 n.2 (9th Cir. 2009).

Likewise, district courts throughout the Ninth Circuit determined failure to identify specific limitations that should have been incorporated into a residual functional capacity is fatal to a claimant's challenge of the ALJ's findings. *See, e.g.*, *Juarez v. Colvin*, 2014 U.S. Dist. LEXIS 37745 at *15 (CD Cal. Mar. 20, 2014) (rejecting an argument that the ALJ erred in evaluating the claimant's limitations where she had "not specified or proffered evidence of any additional limitations from the arthritis that the ALJ failed to consider"); *Hansen v. Berryhill,* 2018 U.S. Dist. LEXIS 19489 (W.D. Wash. Feb. 6, 2018) ("Although Plaintiff argues that the ALJ erred in failing to account for the limitations caused by his ADHD in the RFC assessment, he does not identify which limitations were erroneously omitted, and has thus failed to state an allegation of error"); *Anderson v. Colvin,* 2015 U.S. Dist. LEXIS 32089 (Dist. Id. Mar. 16, 2015) (declining to review the RFC where the plaintiff failed to "specify which cumulative functional limitations were omitted from the RFC," though he claimed the RFC "failed to address the synergistic effects of his schizoaffective and bipolar disorders combined with his functional impairments").

Plaintiff asserts she testified as to "her injuries to the psyche (depression, anxiety, bi-polar disorder);" "the symptoms that each injury causes;" and "the treatment that she has received for her injuries and symptoms." (Doc. 18 at 6) Plaintiff does not identify any specific physical or mental functional limitations from her testimony. For example, though Plaintiff contends the ALJ failed to consider statements regarding her "history of self-inflicted lacerations, i.e., cutting" (*id.* at 13-14), Plaintiff does not identify any specific functional limitations caused by her cutting that were not incorporated into the RFC.[1] The Court is unable to speculate as what limitations Plaintiff believes the ALJ should have incorporated into the RFC based upon her hearing testimony. *See Valentine,* 574 F.3d at 692 n.2; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (noting the Court "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant'"). Thus, Plaintiff fails to identify any error with the RFC based upon her hearing testimony.

## B.     ALJ's Analysis of Plaintiff's Statements

Plaintiff contends the ALJ erred in evaluating her subjective complaints and failed to properly evaluate her statements under the test established by the Ninth Circuit in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). (Doc. 18 at 7-16) According to Plaintiff, "the attacks on her credibility by the ALJ are unsubstantiated and fail to hold up to scrutiny when compared to either the facts of the case, or to the legal standard of providing clear and convincing reasons." (*Id.* at 16)

In evaluating a claimant's statements, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036; *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's

---

[1] Moreover, contrary to Plaintiff's contentions, the ALJ addressed the fact that Plaintiff "complained of… self-injurious behavior" and "has engaged in cutting behavior." (*See* Doc. 10-3 at 26, 30) The ALJ noted Plaintiff's parents provided statements that reported this behavior and found the statements "corroborate the claimant's allegations." (*Id.* at 30) Thus, the ALJ did not ignore Plaintiff's history of self-inflicted lacerations in formulating the RFC.

testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, 2017 WL 5180304 (2017).[2,3]

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

The ALJ determined first that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," including: "depression, anxiety, mood swings, panic attacks, low self-esteem, self-injurious behavior, suicidal ideation, decreased energy, anhedonia, social

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

[3] In the opening brief, Plaintiff refers to an ALJ's obligations under SSR 96-7p in evaluating the credibility of a claimant. (Doc. 18 at 7) However, "the Social Security Administration rescinded SSR 96-7p" effective May 16, 2016, to clarify the standards governing subjective symptoms. *See Peterson v. Berryhill*, 737 Fed. Appx 331, n.1 (9th Cir. 2018) (citing SSR 16-3p, 2016 WL 1119029, at *1). Because SSR 96-7p was rescinded and superseded by SSR 16-3p prior to the ALJ issuing a decision on February 22, 2018, the standards identified by Plaintiff are inapplicable.

withdrawal, irritability, confusion, poor impulse control, appetite and sleep disturbance, distractibility, obsessions, and compulsions." (Doc. 10-3 at 26) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) In making this finding, the ALJ considered the objective medical record, the effectiveness of Plaintiff's treatment, reported side effects of medication, Plaintiff's daily activities, the ALJ's own observations at the hearing. (*Id.* at 26-28)

### 1.    Objective medical evidence

Plaintiff contends the ALJ erred in evaluating the objective record related to her subjective statements because the ALJ "directed focus to comments in the medical record that she had unremarkable appearance, appropriate behavior, normal speech, adequate grooming, good eye contact and clear speech" and "omits those other conditions and symptoms." (Doc. 18 at 11) Defendant argues the ALJ's analysis was proper and the "conclusion about how the medical evidence contradicted Plaintiff's statements was reasonable and supported by substantial evidence." (Doc. 19 at 7)

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines

the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

The ALJ noted Plaintiff alleged difficulty with social interactions, "dealing with stress, handling changes in routine, completing tasks, following instructions, understanding and remembering information." (Doc. 10-3 at 26) However, the ALJ found "the treatment records reflect that her mental functioning was generally adequate." (*Id.*) For example, the ALJ noted:

> On December 17, 2013, she had an unremarkable appearance, appropriate behavior, normal speech, euthymic mood, linear thought form, unremarkable thought content, full orientation, fair judgment, and fair insight (Exhibit 1F/8). On September 23, 2013 and May 21, 2014, she had an unremarkable appearance, appropriate behavior, normal speech, euthymic mood, full affect, linear thought form, unremarkable thought content, full orientation, fair judgment, and fair insight (Exhibits 1F/7 and 1F/9). Her mood, affect, memory, speech, judgment, and insight were normal on August 9, 2013, April 2, 2014, and August 19, 2016 (Exhibits 5F/4, 10F/6, and 10F/14). She exhibited adequate grooming, good eye contact, appropriate affect, clear speech, goal-directed thought process, normal thought content, and intact recent memory on December 14, 2016 (Exhibit 9F/2). From January 2017 to October 2017, she generally had adequate grooming, good eye contact, goal-directed thought process, appropriate affect, fair insight, and fair judgment (Exhibits 9F and 13F). She demonstrated intact memory on October 19, 2017 (Exhibit 13F/3).

(Doc. 10-3 at 26) The ALJ found Plaintiff "demonstrated adequate mental functioning during [the] mental consultative examination[s]" in August 2016 and April 2017. (*Id.* at 26-27) The ALJ observed Plaintiff "had some difficulties with recent memory and general knowledge, but she was able to recall 3 out of 3 objects after a 1-minute delay, spell a word forwards and backwards quickly and correctly, perform a simple mathematical calculation, and complete the serial 3s test very quickly and accurately." (*Id.* at 27)

Thus, contrary to Plaintiff's assertion, the ALJ did not focus only upon her appearance and observed behaviors, but also identified results of objective testing to support her determination. Because the ALJ met her burden to identify specific clinical findings and observations that were inconsistent with Plaintiff's testimony concerning the severity of her impairments, the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's testimony and the relevant medical evidence").

8

### 2. Plaintiff's level of activity

Plaintiff contends the ALJ erred in using her activities of daily living as "a further attack on Plaintiff's credibility." (Doc. 18 at 14-15) Plaintiff argues the ALJ failed to find her daily activities "were 'transferable' to a work setting nor proof that Plaintiff spent a "substantial" part of her day engaged in transferable skills," and as such her "testimony should be considered to be credible in its entirety and given full weight." (Doc. 18 at 15) On the other hand, the Commissioner argues that the ALJ properly considered her daily activities, because "daily activities are relevant for two reasons: either to show a claimant is capable of work or to show that a claimant is not as limited as alleged." (Doc. 19 at 10, citing, *e.g., Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012))

Significantly, as the Commissioner argues, the Ninth Circuit determined a claimant's level of activity—such as claimant's ability to cook, clean, do laundry, and manage her finances— may be sufficient to reject a claimant's allegations regarding the severity of her symptoms. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises and participates in community activities. *Valentine*, 574 F.3d at 693.

In this case, the ALJ determined: Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disability symptoms and limitations." (Doc. 10-3 at 28) The ALJ observed:

> Although she needs reminders, she is essentially independent in personal care. She has the ability to prepare simple meals, do basic cleaning, and wash dishes. She can read, use a computer, count change, play video game for long periods, and watch videos online (Exhibits 3E, 6F, and hearing testimony). She spends a lot of time with friends online (e.g. Exhibit 1F/7 and hearing testimony). She also socializes with her mother and grandmother (Exhibit 6F).

(*Id.*) Notably, Plaintiff does not challenge the ALJ's conclusion that she can prepare meals, perform household chores, and is "essentially independent in personal care." (*See* Doc. 18 at 15) Thus, any challenges to these findings are waived. *See Bray*, 554 F.3d at 1226 n.7 (where a claimant failed to

raise an argument in the opening brief, the Court deemed it waived); *Zango v. Kaspersky Lab, Inc*., 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived").

Because Plaintiff retained the ability to perform her activities of daily living—despite the allegations of disabling mental impairments— the level of activity supports the determination that her impairments were not as disabling as Plaintiff alleged. *See Stubbs-Danielson,* 539 F.3d at 1175; *Burch*, 400 F.3d at 681; *see also Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where … activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). Thus, the Court finds the ALJ did not err in considering her level of activity to reject Plaintiff's statements regarding the severity of her impairments and symptoms.

### 3. Treatment received

When evaluating a claimant's subjective statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). Here, the ALJ determined that "the medical records reflect that [Plaintiff's] medications have been generally effective in reducing her mental symptoms." (Doc. 10-3 at 27)

#### a. Effectiveness of the treatment

Importantly, when an impairment "can be controlled effectively with medication," it cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006). Thus, where an ALJ finds a claimant's treatment is effective, such a finding supports a decision to reject a claimant's statements. *See, e.g., Traynor v. Covlin*, 2014 WL 4792593, at *9 (evidence the claimant's symptoms were managed with "prescription medications and infrequent epidural and cortisone injections" was sufficient for the ALJ to discount the plaintiff's testimony regarding the severity of impairment); *Jones v. Comm'r of Soc. Sec.,* 2014 WL 228590, at *7-10 (E.D. Cal. Jan. 21, 2014) (the ALJ properly found that the claimant's credibility was diminished due to the reported relief provided by treatment).

Plaintiff does not challenge, or even acknowledge, the ALJ's findings regarding the effectiveness of the treatment. (*See generally* Doc. 18 at 10-16) However, the ALJ noted the record included the following:

According to a treatment record dated January 28, 2016, with medications, her mood was stable and her OCD symptoms were well controlled (Exhibit 4F/3). A medical record dated October 6, 2016 mentioned that her energy level and interest in hobbies improved with medication (Exhibit 7F/2). A treatment record dated December 14, 2015 reported that her medications improved her attention, concentration, and impulse control (Exhibit 9F/2). According to a medical report dated April 1, 2017, her medications were effective in improving her ADHD symptoms and stabilizing her mood (Exhibit 8F).

(Doc. 10-3 at 28) Due to the unchallenged finding that Plaintiff's medication is effective in reducing her symptoms, the ALJ did not err in considering this factor.

### b. Side effects of treatment

The ALJ observed that Plaintiff "alleges lethargy, fatigue, shaky hands, headaches, difficulty eating, agitation, restlessness, and anxiety from the use of medications." (Doc. 10-3 at 27) However, the ALJ found the "evidence of record documents no significant concerns from any doctor," which the ALJ concluded "suggests that these side effects are generally mild." (*Id.*) Again, Plaintiff does not dispute the ALJ's findings regarding the severity of her side effects in challenging the ALJ's evaluation of her subjective statements. (Doc. 18 at 10-16) As such, any challenge to this factor is waived, and the Court finds the ALJ did not err in considering the severity of Plaintiff's side effects. *See Bunnell,* 947 F.2d at 346 (observing the ALJ may consider the side effects of medication); *see also Zango*, 568 F.3d at 1177 n. 8.

### 4. ALJ's observations at the hearing

The ALJ observed Plaintiff "was generally able to respond to questions, interact appropriately, follow closely, and participate fully at the hearing." (Doc. 10-3 at 28) Plaintiff does not address the ALJ's observation, which is a proper factor for the ALJ to consider. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986) (when an ALJ includes personal observations of a claimant during the hearing, the decision is not improper if other evidence supports the determination). *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986); *Drouin v. Sullivan*, 966 F.2d 1255, 1258-59 (9th Cir. 1992) (observations of ALJ during the hearing, along with other evidence, is substantial evidence for rejecting testimony).

Because the ALJ set forth other clear and convincing reasons for finding Plaintiff's subjective complaints lacked credibility, the ALJ properly incorporated her personal observation into the decision to reject Plaintiff's statements.

### 5.     Conclusion

The ALJ properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.  Indeed, as set forth above, several factors discussed by the ALJ were not challenged by Plaintiff.  Further, as noted above, Plaintiff fails to identify any specific functional findings in her testimony that she believed should have been incorporated into the RFC.  Accordingly, Plaintiff fails to demonstrate the ALJ erred in evaluating her statements regarding the severity of her impairments and symptoms.

## C.     Step Two Findings

Plaintiff contends the ALJ erred at step two in finding that her borderline personality disorder, autism, and Asperger syndrome were not severe impairments. (Doc. 18 at 23-27)

The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).  The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*, 482 U.S. at 153 (1987).  A claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a), 416.921(a).

### 1.     Medically determinable impairments

The Ninth Circuit determined that a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists, and symptoms by themselves are not sufficient to establish such an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005).

The ALJ determined Plaintiff failed to show borderline personality disorder, Asperger syndrome, and autism were medically determinable impairments.  (Doc. 10-3 at 22)  With the

allegations of borderline personality disorder and Asperger syndrome, the ALJ found:

> The medical records document little definitive evidence of relevant clinical signs or psychological findings to substantiate the existence of these impairments. In addition, there is no definitive diagnosis of these impairments from an acceptable medical source. Accordingly, with respect to these allegations, the undersigned finds that there was a lack of objective evidence to substantiate the existence of a medically determinable impairment.

(*Id.*) Likewise, the ALJ found autism was not a medically determinable impairment at step two because "[d]iagnosis of autism spectrum disorder typically requires specific testing administered by a trained professional," which did not occur. (*Id.*) Instead, the ALJ found the "diagnosis was based entirely on the claimant's allegation and is therefore not definite." (*Id.*)

Plaintiff refutes these findings, arguing "her borderline personality disorder condition should be found to be severe based on the reporting of Dr. Alberto Lopez, who evaluated Plaintiff in the capacity of Plaintiff's psychiatric consultative examiner." (Doc. 18 at 24) Plaintiff observes that Dr. Lopez completed a DSM-IV Multiaxial Evaluation, and indicated Plaintiff had "BPD" under Axis II. (*Id.*, citing AR 266 [Doc. 10-10 at 75]) According to Plaintiff, "her self-destructive behaviors are an indicator of the borderline personality disorder [and] those self-destructive behaviors are reflected in Plaintiff's past cutting of herself." (*Id.* at 24-25)

In addition, Plaintiff asserts her autism and Asperger syndrome "should also be considered a severe condition." (Doc. 18 at 26) Plaintiff notes that Dr. DeBattista examined Plaintiff, whose chief complaints included "ADHD [and] bipolar disorder." (*Id.*; *see also* Doc. 10-10 at 2) Dr. DeBattista opined Plaintiff had "a presentation consistent with a higher functioning autism spectrum individual." (*Id.*) Thus, Dr. DeBattista indicated the following diagnoses: "ADHD by history, bipolar II and autism spectrum disorder" on the DSMI-IV Multiaxial Evaluation. (Doc. 10-10 at 4)

Notably, it is undisputed that there is no record of Plaintiff being tested for Aspergers syndrome or autism to support either diagnosis, as the ALJ indicated. As one court observed, a diagnosis for autism spectrum disorder "involves the use of standardized lists of questions about behavior directed to caregivers and parents, as well as observations of behaviors in standardized settings by trained observers." *See Xiangdong He v. Sec'y of HHS,* 2012 WL 1185686 at *7 (U.S. Fed. Claims Mar. 12, 2012). Without such testing, it is unclear what symptoms the diagnoses were based upon, or the

significance of these symptoms with the diagnoses.  Further, the ALJ noted Plaintiff also "did not accurately report her substance abuse, which could affect the diagnosis" (Doc. 10-3 at 22), and Plaintiff does not dispute this finding.

Similarly, an ALJ may find borderline personality disorder is not a medically determinable impairment where a claimant "had only been diagnosed with borderline personality disorder …once during the relevant period, by a consultative examiner based on a single examination." *See Arnold v. Colvin*, 2014 WL 5325345 at *7 (M.D. Penn. Oct. 2014). Further, Plaintiff fails explain why her history of self-inflicted lacerations should be associated with borderline personality disorder rather than another medically determinable impairment.

### 2.    Harmless error

Significantly, even if the Court were to find the ALJ erred in finding borderline personality disorder, Asperger syndrome, and autism were "not severe" at step two, any error in designating these specific impairments as severe at step two was harmless.

The Ninth Circuit determined that any error in omitting an impairment from the severe impairments identified at step two was harmless where the step was resolved in the claimant's favor. *Burch*, 400 F.3d at 682.  Here, step two was clearly resolved in Plaintiff's favor because the ALJ determined Plaintiff had medically determinable severe mental impairments.  The ALJ then proceeded through the rest of the steps, and discussed all symptoms alleged by Plaintiff—whether they could be attributed to borderline personality disorder, Asperger syndrome, autism, or another impairment—and evaluated the severity of these symptoms to formulate the RFC.  (*See* Doc. 10-3 at 25-30) Thus, any error at step two was harmless.

### D.    Plaintiff's Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating an RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility.  *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  Further, the ALJ must consider "all

14

of [a claimant's] medically determinable impairments," whether severe or not, when assessing a RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff contends the ALJ erred in her determination of Plaintiff's psychiatric RFC by failing to comply with the requirements of SSR-96p, failing to consider the "marked limitation in her ability for adapting or managing oneself," and weighing the opinions from Drs. DeBattista and Lopez. (Doc. 18 at 16-21) (emphasis omitted). The Commissioner argues the ALJ's evaluation of Plaintiff's RFC was proper, and her determination is supported by substantial evidence. (Doc. 19 at 12-17)

### 1. Marked limitation with adapting or managing oneself

Plaintiff observes that at step two, the ALJ determined she has a "marked limitation" in the paragraph B domain of "adapting or managing oneself." (Doc. 18 at 7, citing AR 23 [Doc. 10-3 at 24]) She contends, "the ALJ failed to adequately address her own conclusion…, as the assigned RFC failed to give any consideration to Plaintiff's marked limitation in adapting or managing oneself." (*Id.*) According to Plaintiff, "had the ALJ addressed the fact that Plaintiff experiences serious interference with her ability to adapt or manage oneself, in her RFC that Plaintiff would have been found unable to work." (*Id.*)

The Commissioner argues, "the legal principle that Plaintiff advances—that she would be disabled with a marked limitation in adapting and managing herself—is fundamentally flawed." (Doc. 19 at 13) The Commissioner observes that under the Regulations, and as explained by the ALJ, "a claimant's mental impairments must result in at least one extreme or two marked limitations in the four functional areas in order to result in a finding of disability…" (*Id.*) Further, the Commissioner asserts that the ALJ set forth a "myriad of limitations in the RFC finding to address Plaintiff's mental symptoms— ranging from a low-stress work environment with a relaxed production pace to limited social interaction with supervisors, coworkers, and the public," and "Plaintiff does not argue why the RFC finding did not already accommodate Plaintiff's difficulty in this functional area." (*Id.*, citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008))

Notably, the psychiatric review technique described at step two is "not an RFC assessment," but is "used to rate the severity of mental impairment(s)." *See* SSR 96-8p, 1996 SSR LEXIS 5. Once the limitations are identified by an ALJ at step two, the RFC determination "need not be identical to the

relevant limitations but must be consistent with them." *Caldeira v. Comm'r of Soc. Sec.*, 2017 WL 5192359 at *13-14 (E.D. Cal. Nov. 9, 2017) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010)). Here, the ALJ indicated the "residual functional capacity relect[ed] the degree of limitation… found in the 'paragraph B' mental functional analysis." (Doc. 10-3 at 25) The ALJ included limitations to "simple and routine tasks," "low-stress work," "a relaxed production pace," and "occasional interaction with supervisors and brief and superficial interaction with coworkers and the public." (*Id.*) Plaintiff fails to explain how these limitations are not consistent with a "marked" limitation in the area of adapting and managing oneself.

The domain of adapting or managing oneself addresses the "abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(4). Courts have determined that restrictions such as those identified by the ALJ in the RFC—limiting a claimant to simple, routine tasks with limitations on interactions with coworkers and the public—are consistent with "marked" limitations in adaption identified at step two. *See, e.g.*, *Hill v. Comm'r of Soc. Sec.*, 2020 WL 836386 *4-5 (W.D.N.Y. Feb. 20, 2020) (finding the ALJ did not err in limiting a claimant with marked limitations in adapting and managing oneself "to performing simple, routine and repetitive tasks, and simple work-related decisions, and to only occasional interaction with coworkers and the public"); *Self v. Berryhill*, 2019 WL 825772, *5 (M.D.N.C. Feb. 21, 2019) (finding "the mental RFC sufficiently captured Plaintiff's marked deficit in adapting and managing herself" where the ALJ limited the plaintiff to "simple, routine, low-stress work with few changes and few decisions"). Thus, the Court finds the RFC identified by the ALJ encompasses Plaintiff's marked limitation with the ability to adapt and manage oneself domain.

2. Evaluation of medical opinions

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more

weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts it. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

### a. Opinion of Dr. DeBattista

Plaintiff contends the ALJ erred in evaluating the opinions of Dr. DeBattista, who performed a consultative examination in April 2017. (Doc. 18 at 17-20) Dr. DeBattista noted he reviewed "a general medical progress note" from August 2016 and treatment not from a psychological services facility in October 2016. (Doc. 10-10 at 2) Plaintiff reported she had ADHD, bipolar disorder, and "lifelong problems with concentration." (*Id.*) She stated she had "trouble interacting with people" and was "socially isolated." (*Id.* at 3) Dr. DeBattista observed that Plaintiff was "mildly disheveled" and "appear[ed] socially awkward" but had fair eye contact and did not exhibit any unusual behaviors. (*Id.*) He opined Plaintiff's mood was "depressed and anxious" and she "endorse[d] some vegetative features." (*Id.*) According to Dr. DeBattista, Plaintiff "could recall three of three objects after one minute and one of three objects after five minutes," "spell the word 'world' forwards and backwards quickly and correctly" and "do Serial Threes to 79 very quickly and accurately." (*Id.*) He found Plaintiff's insight was fair and her judgment was adequate. (*Id.*) Dr. DeBattista opined Plaintiff had "a presentation consistent with a higher functioning autism spectrum individual." (*Id.* at 4) "Based on the examination," he concluded Plaintiff was "able to understand, remember, and carry out simple one or two-step job instructions" as well as "detailed and complex instructions." (*Id.*) He believed Plaintiff did not have any impairments with concentration, assistance, and pace; but was "moderately impaired" with her ability to associate with day-to-day work activity, including attendance. (*Id.*) Dr. DeBattista also opined Plaintiff was "moderately-to-markedly impaired" with her ability to accept instructions,

maintain regular attendance, and work a full workday or week. (*Id.*)

The ALJ reviewed these findings and determined the diagnosis of autism spectrum disorder was not supported, as set forth above. (Doc. 10-3 at 22, 29) In addition, the ALJ gave "little weight" to the opinion of Dr. DeBattista, finding he "understate[d] the claimant's mental capacity." (*Id.* at 29) The ALJ stated the opinion was "contradicted by the generally adequate mental functioning that the claimant exhibited throughout the adjudicative period." (*Id.*) The ALJ also believed the opinions were "inconsistent with the general effectiveness of the claimant's psychotropic medication," and "the lack of evidence of frequent or extended psychiatric hospitalization." (*Id.*) Further, the ALJ found the restrictions were "inconsistent with the claimant's generally adequate daily living activities and social activities as well as extensive online gaming, which requires an ability to attend regularly, concentrate, and persist." (*Id.*) Significantly, the Ninth Circuit has determined an ALJ may reject the opinions from a physician for each of the reasons identified by the ALJ.

### i. *Inconsistency with the record*

An ALJ may reject limitations "unsupported by the record as a whole" and inconsistent with the treatment a claimant received. *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ found Dr. DeBattista's opinion identifying moderate to marked limitations was inconsistent with "the generally adequate mental functioning that the claimant exhibited throughout the adjudicative period." (Doc. 10-3 at 29) In particular, the ALJ observed that "the treatment notes reflect that her mental functioning was generally adequate" as follows:

> On December 17, 2013, she had an unremarkable appearance, appropriate behavior, normal speech, euthymic mood, linear thought form, unremarkable thought content, full orientation, fair judgment, and fair insight (Exhibit 1F/8). On September 23, 2013 and May 21, 2014, she had an unremarkable appearance, appropriate behavior, normal speech, euthymic mood, full affect, linear thought form, unremarkable thought content, full orientation, fair judgment, and fair insight (Exhibits 1F/7 and 1F/9). Her mood, affect, memory, speech, judgment, and insight were normal on August 9, 2013, April 2, 2014, and August 19, 2016 (Exhibits 5F/4, 10F/6, and 10F/14). She exhibited adequate grooming, good eye contact, appropriate affect, clear speech, goal-directed thought process, normal thought content, and intact recent memory on December 14, 2016 (Exhibit 9F/2). From January 2017 to October 2017, she generally had adequate grooming, good eye contact, goal-directed thought process, appropriate affect, fair insight, and fair judgment (Exhibits 9F and 13F). She demonstrated intact memory on October 19, 2017 (Exhibit 13F/3).

(*Id.* at 26) Furthermore, the ALJ found Plaintiff had "adequate mental functioning" during the consultative examination in August 2016, noting that Plaintiff "demonstrated intact memory, adequate fund of knowledge, adequate attention span, and adequate concentration." (*Id.* at 26-27) The ALJ also found Plaintiff exhibited "adequate" insight and judgment in August 2016, and "fair" insight and judgment in April 2017. (*Id.* at 27)

Notably, Plaintiff does not dispute these findings in the record or by the ALJ. Because the ALJ met her burden to identify specific inconsistencies between the medical record and the findings of Dr. DeBattista, the Court finds the inconsistencies support the ALJ's decision to give less weight to the opinion.

### ii.     Inconsistency with Plaintiff's activities

The Ninth Circuit also determined an ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Thus, the ALJ was entitled to give less weight to the opinion of Dr. DeBattista as inconsistent with Plaintiff's level of activity.

As discussed above, the ALJ noted: "[Plaintiff] has the ability to prepare simple meals, do basic cleaning, and wash dishes. She can read, use a computer, count change, play video game for long periods, and watch videos online." (*Id.* at 28) In addition, the ALJ observed that Plaintiff spent "a lot of time with friends online" and "socializes with her mother and grandmother." (*Id.*) Plaintiff does not

dispute these activities are inconsistent with the limitations identified by Dr. DeBattista.[4] (*See* Doc. 18 at 17-19) Thus, her level of activity was a proper consideration for the ALJ in evaluating the weight to give Dr. DeBattista's opinion.

### b. Opinion of Dr. Lopez

In the opening brief, Plaintiff identifies a section entitled "Rationale for imposition of a psychiatric RFC based on Dr. Alberto Lopez." (Doc. 18 at 21) Plaintiff then summarized the findings of Dr. Lopez from the Mental Residual Functional Capacity Statement Dr. Lopez completed. (*Id.* at 21-22, citing AR 466-72 [Doc. 10-10 at 82]) However, Plaintiff does not address the ALJ's findings related to the opinion of Dr. Lopez, or explain whether she believes the RFC should have been based upon the findings of Dr. Lopez. (*See id.*) The Court is unable to speculate as to the errors Plaintiff believes the ALJ committed when evaluating the opinion of Dr. Lopez. *See Valentine,* 574 F.3d at 692 n.2; *Indep. Towers of Wash.*, 350 F.3d at 929.

In reviewing the medical record and the findings of Dr. Lopez, the ALJ observed that Dr. Lopez concluded Plaintiff "was precluded from performing most basic mental work-related activities 10% or more of the time in an 8-hour workday, would be off task more than 30% of the time in an 8-hour workday, could work efficiently only 50% of the time in an 8-hour workday, and would be absent from work or unable to complete a workday 5 days or more per month." (Doc. 10-3 at 26) The ALJ rejected this opinion, in part, for the same reasons as the opinion of Dr. DeBattista—finding it inconsistent with Plaintiff's demonstrated mental functioning, the effectiveness of her medication, treatment history, and "frequent online social activities, and extensive gaming." (*Id.*) Further, the ALJ found Plaintiff "responded to test items in an extremely exaggerated manner and the resulting clinical profile was not a valid indication of her personality or symptoms," and as a result "Dr. Lopez should not have relied on these test results." (*Id.*)

Again, Plaintiff has not challenged any of the reasons identified by the ALJ for giving less weight to the opinions of Dr. Lopez. In addition, Plaintiff has not identified any functional limitations

---

[4] Because Plaintiff did not address this reason identified by the ALJ for giving less weight to the opinion, she has waived any argument regarding these findings. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived"); *see also Pendley v. Colvin*, 2016 U.S. Dist. LEXIS 53470 at *22-23 (Dist. Or. Mar. 2, 2016) (noting that the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument against those-non challenged reasons [was] deemed waived").

from the report of Dr. Lopez that she believes should have been incorporated into the RFC.  Because Plaintiff has not addressed these findings by the ALJ—including that the testing results were not valid— she waived any challenge to the ALJ's decision to reject the opinion of Dr. Lopez.  *See Zango, Inc.,* 568 F.3d at 1177 n.8 ("arguments not raised by a party in an opening brief are waived")*; see also Pendley,* 2016 U.S. Dist. LEXIS 53470 at *22-23 (noting that where the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument against those-non challenged reasons [was] deemed waived").

### 4.     Substantial evidence supports the RFC

Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error."  *Gallardo v. Astrue*, 2008 WL 4183985 at *11 (E.D. Cal. Sept. 10, 2008); *see also German v. Comm'r of Soc. Sec.*, 2011 WL 924737 at *3 (E.D. Cal. Mar. 14, 2011) (explaining "[i]t is not for this court to reevaluate the evidence").  The term "substantial evidence" "describes a quality of evidence … intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong."  SSR 96-2p, 1996 SSR LEXIS 9 at *8.  "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."  *Id.*

The ALJ's decision is supported by the opinion of Dr. Anthony Benigno, who performed a consultative examination in August 2016.  (*See* Doc. 10-3 at 28)  Dr. Benigno observed that Plaintiff's "thoughts were coherent and logical, and thought content was appropriate." (Doc. 10-9 at 87)  He tested Plaintiff's immediate, recent and remote memories and found they were "intact" after Plaintiff "was able to provide general details regarding her daily activities" and "recalled the names of 3 out of 3 familiar objects after a 5-minute interval and an inference task." (*Id.*)  Dr. Benigno opined Plaintiff "demonstrated an adequate attention span for answering interview questions and following test instructions." (*Id.*)  In addition, he found Plaintiff "was able to sustain concentration and work without distraction" while completing performance tasks." (*Id.*)  Further, Dr. Benigno found Plaintiff exhibited adequate insight and judgment after asking question about a hypothetical event. (*Id.*)  He concluded Plaintiff "would be able to understand, remember and carry out short, simplistic instructions with no

difficulty." (*Id.* at 88) Dr. Benigno also believed Plaintiff would have "mild difficulty" with making simple work-related decisions without special supervision; responding to changes in a workplace setting; maintaining persistence and pace, and interacting "appropriately with supervisors, coworkers and peers on a consistent basis." (*Id.*)

With the RFC, the ALJ incorporated the limitations identified by Dr. Benigno by limiting Plaintiff to "simple and routine tasks," in an environment that involved "simple workplace decisions" and "little change to the setting and routine." (Doc. 10-3 at 25) Furthermore, the ALJ limited Plaintiff to "only occasional interaction with supervisors and brief and superficial interaction with coworkers and the public" (*id.*), which is consistent with Dr. Benigno's belief that Plaintiff would have mild difficulty with such interactions. Importantly, Dr. Benigno based his conclusions upon the examination (Doc. 10-9 at 88), and findings from an examining physician that "rest[] on independent examination" constitute substantial evidence); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence).

Likewise, the RFC of the ALJ is supported by the opinions of Drs. Kaper and Tendler, non-examining physicians. Dr. Kaper opined Plaintiff had "adequate memory, concentration, persistence, [and] pace," but "difficulties with social functioning." (Doc. 10-3 at 28, citing Exh. 1A; *see also* Doc. 10-4 at 7-10). As the ALJ noted, Dr. Tendler determined:

> [T]he claimant would have difficulty relating to the public on a regular basis, but she could generally sustain simple work, maintain regular attendance, complete a normal workweek, adapt to changes or routine and simple situations, handle relaxed production pace and superficial interactions, and tolerate the minim social demands of simple-work settings.

(*Id.*, citing Exh. 3A; *see also* Doc. 10-4 at 19-24) The ALJ gave these opinions "great weight." (*Id.*) Because the opinions of Drs. Kaper and Tendler are consistent with the conclusions of Dr. Benigno, these opinions are also substantial evidence in support of the RFC identified by the ALJ. *See Tonapetyan*, 242 F.3d 1149 (the opinions of non-examining physicians "may constitute substantial evidence when … consistent with other independent evidence in the record").

5.      Requirements of SSR 96-p

Plaintiff observes that SSR 96-p requires an ALJ "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

nonmedical evidence (e.g., daily activities, observations)." (Doc. 18 at 16) According to Plaintiff, "While ALJ Maccione has summarized the medical evidence in this case, her psychiatric RFC assessment for Plaintiff's benefits was conclusory and did not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p." (*Id.*)

The Commissioner argues, "Plaintiff does not allege any particular alleged deficiency, but instead makes a general argument that is insufficient to allege reversible error." (Doc. 19 at 12, citing *Carmickle*, 533 F.3d at 1161 n.2) The Commissioner also contends "the ALJ more than met the burden to articulate her findings by applying the relevant regulatory framework, stating her findings, and citing supporting evidence." (*Id.*, citing AR 24-30 [Doc. 10-3 at 25-31])

Notably, the purpose of SSR 96-p was to provide "the Social Security Administration's policies and policy interpretations regarding the assessment of [a] residual functional capacity (RFC) in initial claims for disability benefits…" SSR 96-p, 1996 SSR LEXIS 5 at *1. Toward that end, SSR 96-p explains how an "RFC represents the most that an individual can do despite his or her limitations or restrictions," and identifies the evidence that must be considered by an ALJ, including a claimant's medical history, signs and objective findings, treatment, daily activities, evidence from lay witnesses, observations, medical opinions, effect of symptoms, any attempts to work, and more. *Id.* at *12-14. It also instructs that the ALJ include a "narrative discussion," including "a thorough discussion and analysis of the objective medical and other evidence," "resolution of any inconsistencies in the evidence as a whole," and an explanation of the effects of symptoms reported "on the individual's ability to work." *Id.* at *19-20.

Plaintiff has not identified any specific provision of these standards set forth in SSR 96-p that she believes the ALJ has not satisfied. Indeed, the Court's review of the ALJ's decision indicates she provided a thorough summary of the medical record—as Plaintiff acknowledges—and the treatment Plaintiff received, the effectiveness of the treatment, her daily activities, statements from Plaintiff and her parents, and the medical opinions of record. (*See* Doc. 10-3 at 25-30) Furthermore, the ALJ resolved conflicts in the record and identified an RFC supported by substantial evidence in the record. Thus, Plaintiff fails to show any error by the ALJ for failing to comply with the narrative discussion requirements identified by SSR 96-p.

**F.       Duty to Develop the Record**

A claimant bears the burden to provide medical evidence that supports the existence of a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits"). As the Supreme Court explained, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5.

On the other hand, the law is well-established in the Ninth Circuit that the ALJ has a duty in some circumstances "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The Ninth Circuit explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). This duty to develop the record also extends to the Appeals Council. *Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the [hearing officer's] duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the [Appeals] Council's review is similarly broad").

The law imposes a duty to develop the record only in limited circumstances. 20 C.F.R. § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Tonapetyan,* 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Plaintiff contends, "The Appeals Council erred by failing to determine that the ALJ committed reversible error when she failed to obtain an updated opinion by a medical advisor, which was

necessary given the addition of new evidence added to the file after the State agency medical consultants reviewed this case, and given the complicated medical issues involved." (Doc. 18 at 27) Plaintiff contends "the newly added evidence included Plaintiff's testimony regarding her psyche condition and the effect of such on her ability to think and concentrate." (*Id.*) However, the ALJ addressed Plaintiff's testimony regarding the severity of her symptoms and identified specific and legitimate reasons to reject her testimony, as set forth above. In addition, the record related to Plaintiff's ability to concentrate was not ambiguous or inadequate, such that additional information was required to render a decision on Plaintiff's application for benefits. Thus, Plaintiff fails to demonstrate either the ALJ or Appeals Council had a duty to develop the record. *See Mayes*, 276 F.3d at 459-60; *Tonapetyan,* 242 F.3d at 1150.

## CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ applied the proper legal standards and the RFC is supported by substantial evidence in the record. Accordingly, the Court **ORDERS**:

1.      Defendant's motion for summary judgment (Doc. 19) is **GRANTED**;

2.      The decision of the Commissioner of Social Security is **AFFIRMED**; and

3.      The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Alissa Stevens.

IT IS SO ORDERED.

Dated:   **March 19, 2020**              **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE